Good morning. Our last case of the day is Carlos Ramirez v. The Paradies Shops, LLC. That's case No. 22-12853. Let's see, we have Mr. Maxey for the appellant. And Mr. Maxey, it looks like you've reserved seven minutes for rebuttal. Is that correct? And for the appellee, we have Mr. Bond. All right. You may begin when you're ready, Mr. Maxey. May I please the court? Preliminarily, I appreciate the court's indulgence in repeating some arguments that were made less than an hour ago. The issue in this case, of course, is very similar to those in the Americold case. One substantial difference is we don't have the Rule 59, Rule 60 issue in this one. Let me ask you this. Neither one of you suggests this in your brief, but I'm going to ask you this. But when you read the Georgia Supreme Court opinion in McConnell, and then you read the opinion in the Collins case, seems to me the court did leave open the possibility of a duty to protect this personal information. What would you say if we certified the question on the negligence claim to the Georgia Supreme Court? Because these cases seem to be a little confusing, and they're not really 100 percent consistent. What would you say if we certified that question? We would not be opposed to that. Clearly, the court... Do you think that's something we should do? I don't know that it's necessary. The court clearly left the question open, and courts routinely have to guess, speculate as to what the Georgia Supreme Court would do. I don't know what occurred in the Collins case. The fact that the court did not just outright say there's no potential duty, that it makes sense to conclude that, in fact, there is a duty, or that's at least what the Georgia Supreme Court would find. And the four district courts that have looked at the issue have agreed with that. There was, of course, Judge May in the Purvis case initially found that way, and then Chief Judge Batten here, Judge Thrash in Equifax. I'm sorry, Chief Judge Batten in the Maricold case, Judge Thrash in Equifax, Judge Ross here, and Judge Jones in the Parkmobile case all agreed that the duty would exist. So to continue, there's two issues here. Here, of course, Judge Ross applied Chief Judge Batten's two-pronged versatility test from Maricold, and found the plaintiff had not sufficiently alleged foreseeability, had not alleged that it was foreseeable to this particular defendant, or foreseeable to a defendant in this industry, which is airline concessions. They operate the shops and the airports. I'm not sure how we would do the latter, how we would possibly allege that businesses in the airport concessions industry, that for some reason it's foreseeable, but our position, of course, is that we don't have to allege that. It's what's foreseeable to a reasonable person, not what's foreseeable to a specific person or entity, or to an entity in a particular industry. Here, the defendant chose to collect and store the information of 76,000 people on its network in an Internet-accessible environment. It chose not to encrypt their Social Security numbers. It chose not to purge old data. The plaintiff here stopped working there seven years before the data breach, yet they've got his information on their network where it's potentially accessible. And for them to say that it was in their data breach notice, they say they're going to improve their security measures. The notion that it's not foreseeable, that when you store that information on your network in this day and age, that it's not foreseeable, that someone may get in there and try to take it, that doesn't make sense. Let me ask you the question. Do you think that Judge May correctly anticipated what the Georgia Supreme Court would do in the Purvis case? As to whether there's a duty or not? Yes. So she relied on allegations of foreseeability, which you're discussing, of the particular harm that occurred. And so tell me why you think you've adequately alleged foreseeability in this case. So Judge May in the Purvis case squarely stated, and it wasn't just employees, it was patients and employees, but the phrase is common sense, that when patients and employees entrust their data to, for patients, a health care provider, for employees, to an employer, that the health care provider or employer will safeguard the data. Now, Judge May also emphasized that in the health care context, where there are a lot of data breaches, that emphasize that, okay, on top of this, on top of the fact that it's common sense, health care providers should be especially on notice. What Chief Judge Batten did, and then what your Judge Ross relied on, was taking that health care providers should be particularly on notice and turning that into a requirement. That it be, that the particular industry be on notice. And I'm not sure how a district court on the motion to dismiss stage determines which industries are on notice and which aren't, right? Do you take judicial notice that the health care industry is on notice, but that the logistics industry is not, or that the airport concessions industry is not? Or is it just what's foreseeable to a reasonable person? And our position is it's the latter, and then really that's a jury question. It's not something that the district court should be resolving on a motion to dismiss. Let me ask you, aren't you in essence asking us to open the floodgates to class action litigation every time there's a data breach? No, certainly not. In the negligence context, this information is stored, it's unencrypted, it's put on a network, it's internet accessible for reasons that we don't know. Does every company get a data breach? No. Presumably some are implementing their security, they're doing what needs to be done, they're spending the money. If they choose to store the data in an internet accessible environment, they're spending the money to make sure it's adequately protected. But where there is a data breach, you would say there's a duty that was breached in every case? I think as a practical matter, for a motion to dismiss, yes, I think it's enough that there's a data breach and the information was, they send out letters notifying people that their information was exposed. In this case, there was fraudulent activity after the data breach. Certainly in a case like that, that's enough to survive a motion to dismiss. Now it's summary judgment. Would you look at what the defendant do to implement security? It's not a strict liability. We're not taking that position that every single time there's a data breach, it means the defendant must have done something wrong. But you go through discovery, you see what they did, and you see whether under the circumstances it was reasonable. You're about to run out of time. Let me ask you a question on the breach of implied contract claim. Don't you lose that because you didn't allege anywhere in your complaint that parities agreed to protect your client's personal information? The cases are different on that. There's an Irwin v. RBS WorldPay case that was Judge Finnell finding it was enough, and that's from 2010, finding it was enough to allege that the, and that's in the financial services context. These are customers. It was enough to allege that when they, they would not have handed over their data, but for the understanding that it would be protected. There was no requirement of an affirmative statement from the defendant. And in the RBS case, Judge Totenberg squarely said that, an affirmative statement is not required, citing a Georgia Court of Appeals case. The Georgia Court of Appeals in 2019 relied on those two cases and remained in the case to the trial court for that very proposition. It did not require the affirmative statement. Now, district courts in the Northern District of Georgia, four of them, have gone a different way on that, requiring the affirmative statement, but they rely on the Longenecker-Wells case from the Third Circuit that applies Pennsylvania law. Our position is that the Georgia Court of Appeals' view on the law is what you control here. One last question. You heard a case before this one that I've not read the briefs in the preceding case, but it seems to me the issues are pretty close, if not identical. Why weren't those cases consolidated? Did either one of you ask that they be consolidated? Your Honor, I don't believe we specifically asked they be consolidated. I believe we mentioned in our papers that there is a related issue, but I don't believe we filed a motion to consolidate them. Okay. Thank you. May it please the Court. Paul Bond from Holland & Knight for the Parities Shops, LLC. We know this case was disposed of on a motion to dismiss, and when we applied the Farmley-Ickball standard on motion to dismiss, tell us why the plaintiff didn't adequately plead duty, breach of the duty, causation, injury, and damages. When I look at the complaint, it seems to me the allegations meet the Ickball-Farmley standard. Why is that wrong? Well, Your Honor, the Twombly-Ickball standard sets forth the requirements for factual pleading. That factual pleading has to hit the mark under state law for making plausible a recovery under that state law. I think the generic pleadings that are in this complaint, that are very much like the pleadings in the Americolt complaint, that are very much like the pleadings in a hundred other class actions that are returned once data breach letters are sent as though that was an engraved invitation to sue. I've seen this complaint a hundred times, and essentially the reason it doesn't hit the mark is because it doesn't have what the Georgia Supreme Court required clearly under the McConnell decision. So in McConnell, there's no question. The government received, required information from Georgia citizens, thousands of Georgia citizens, for them to get their unemployment benefits. What do you say about what the Georgia Supreme Court said in Collins about McConnell? Well, in Collins, all the Supreme Court said was that the issue of duty was not in front of it, that the plaintiffs may have a harder time on duty than they had on injury, which was the issue in front of it. Personally, I believe the Pervis court got it right. McConnell says there has to be a duty, something more than just collecting information and losing it, because that's what the Georgia Department of Labor did. Collins said, you know, such a duty might exist. Go forth and prove it to me. And that's what these pleadings don't do, certainly not to the standard of Twombly and Iqbal. Well, here's your problem, though. The details about the cyber attack that was actually perpetrated are less than clear. And so it seems to me it would be extremely difficult for the plaintiff to have ledged specific facts like the court had before it in Pervis about the foreseeability of the attack. So why shouldn't we let this case go to discovery and we'll find out those details? Well, essentially, if you don't go to discovery, you don't allow plaintiffs to go to discovery to find out why they sued. Well, but here it's a unique situation because the information is in the hands of the defendant. The plaintiff only has what the defendant has chosen to disclose about the breach. Well, to the extent that the plaintiff believes they are owed a duty, you know, they are able to, have been able to, in many of these Northern District of Georgia cases to which plaintiffs cite, have been able to find specific facts to say, here's why it was foreseeable. Like in the Equifax case where they say, we have information that the Equifax company was repeatedly breached. We have information that they failed to apply a critical patch. We have information, you know, in other cases that there was a failure of one sort or another. That hits the foreseeability mark. That hits the standard. In other cases, such as Pervis and in cases involving companies that are heavily regulated as, as fair credit reporting agencies, as financial institutions, plaintiffs are able to say, yes, it was extremely foreseeable in your industry. But as Mr. Maxey says, I mean, who knows whether it's the case in this industry. He would just be relying on sort of common knowledge, I guess. Well, certainly. You know, but they didn't even plead. Going back to Judge Dabena's Twombly question, they didn't plead anything about the industry. Well, they pled that it was foreseeable. I mean, that is in the complaint. Excuse me. No, that's in the complaint. They pled in a threadbare, formulaic way, as they do in each of these complaints, whether it's against an airport retail company, whether it's against a company that does air-refrigerated transportation, which is what Maricol did, whether it's a campus security organization, as in the Baker case, they plead it's foreseeable. But if that was enough, then literally every time a data security breach notice is sent by anyone in any industry, that is enough to just staple to a complaint and bring them to court. That sort of indiscriminate imposition of liability is not what the Georgia Supreme Court had in mind  What's your position on whether or not we should certify a question on the negligence claim to the Georgia Supreme Court? Neither you nor opposing counsel read McConnell the same way. One of you thinks it's a very narrow holding. The other one doesn't. So why not let the Georgia Supreme Court tell us once and for all what the answer to the question is? We are confident the Georgia Supreme Court would come out on the side of affirming what Judge Ross did, ultimately, on her reading of Georgia law, and we would be perfectly happy with certification to the Georgia Supreme Court on that issue. Do you have a position on which case should be, I'm curious, decided first? The one we heard earlier this morning, Schaefer or the Ramirez case? I believe in the Schaefer case, there were a number of side issues with respect to choice of law, with respect to the timeliness of amendment that we don't have in our case. I think in our case, it's a pretty direct set of issues, and so I think that argues potentially for deciding that first. You agree, though, that what happens in one would impact what happens in the other? I do. I would note, and it's something that Mr. Maxey said, in connection with the Americhold arguments, was about, you know, part of the duty arises from the relationship between the data subject and the company. And I would note there's a potentially important difference. In the Schaefer case, it involved employees and former employees of this company. In our case, Mr. Ramirez, per the complaint, it's paragraph 6162, never worked for Paradis. He worked for a company, Hojay Branded Foods. He stopped working for that company. Years later, it was acquired by, he alleges, the Paradis shops. So when he says, oh, it's an implied contract, I gave my information to them in order to work for them, and, you know, and that was the exchange that we made. They made me an implied promise to protect my information. He's talking about another company. So I think that's one additional, you know, potential differentiator between the cases. But, you know, otherwise I'd say the cases present broadly the same issues and broadly the same opportunity, I think, to affirm what the district, the thoughtful work that's been done by the district courts in applying these issues to essentially, in lieu of dispositive guidance, saying that there can never exist any duty of common law duty of confidentiality or taking the opposite approach and saying literally every company in the state of Georgia owes to, you know, owes a common law duty of confidentiality as an employer or even, in Paradis' cases, as simply custodian of archival records about employees. You know, a middle ground has been struck, the Judge Ross did in this case, looking for, were there repeated warnings and alerts? Was there something here that, you know, gives rise to foreseeability? Even the cases that plaintiffs cite in their appeals briefs, they talk about, well, employers in Georgia have a duty to have a safe workplace. And certainly that is the law. But when you look at those cases, those are cases where employers have essentially set up operations in an unsafe way that where they, you know, in one case, for example, where they know that there are dangerous criminal people at a certain place. And yet they've set up an office that operates overnight and someone got injured and it was held that their knowledge of those specific circumstances gave rise to a duty. There are no specific circumstances surrounding Paradis alleged in the complaint, no more so than you can imagine. Again, how would Mr. Ramirez know that, what the specific circumstances were about what the company knew and what the company did? I believe that merely suggests if he doesn't know, he shouldn't sue. You know, there is the ability to get things from news accounts. There's the ability to get things. He alleges some other things in the complaint about, for example, what he read on the darknet about when the attack occurred. Plaintiffs have the ability to get information from other sources. And all of the information that's required to be given to notice recipients are in the data security breach notification letters. So, Leslie, I'd just like to say, you know, Judge Ross was also correct about the implied contract issue. Even if Paradis is considered to stand in the shoes of its predecessor organization, the idea that simply giving your name and social security number to someone creates an implied contract for you to prevent that information from being breached. If that were true, McConnell would be wrong. Those citizens of Georgia gave their information to the Georgia Department of Labor. They were required to give that information to get unemployment and other benefits. They, the Georgia Department of Labor, sent it in a spreadsheet to a thousand of the wrong people. And the Georgia Supreme Court still said, we don't see a duty here. And, you know, with respect to implied contract, multiple courts in the progeny of McConnell have said the same thing. Not just Scheffler and Americold, but also some of the cases that the plaintiffs have cited. Essentially because there's two failings from a contractual perspective. One, there's no meeting of the minds. What is it that the defendant was supposed to do? Protect the information how? Protect it from what? Protect it for what duration? If he's saying we kept the information too long, how long were we supposed to keep it? For a court to enforce a contract, there needs to be a meaningful term to enforce. The other issue is consideration. For there to be consideration in a contract, one party has to give something economically valuable to the other party. They have to give it because the other party has offered something. Giving your name and your social security number, which I've done in every job I've ever had. I didn't do it because my employer would then be able to use it or sell it or something. I did it because it's the law. You have to identify yourself in order to work in America. Doing something because it's the law isn't consideration sufficient to support and apply a contract. So ultimately, we would urge the court to affirm Judge Ross's well-considered opinion and to put an end to this case after putting an end to this case. Thank you. Thank you. May it please the court. I think counsel just asked a question about what was the defendant supposed to do here. And one of the things we allege, and it's important in these cases, is the failure to encrypt information, particularly social security numbers. And that question is unanswered. Why didn't the defendant here encrypt the social security numbers if they had done that and a hacker gets in there and takes the information and they can't use it? Instead, they chose not to encrypt it. They chose to put it on their network in this Internet-accessible environment, information about some people going back seven years who hadn't worked there for seven years, and then say, well, it's not foreseeable to us that something bad could happen. That defies common sense. The court asked a question about how would the plaintiffs in any of these cases know exactly what happened? And the answer is, we usually don't. I mean, once we get into discovery in these cases, the defendants sometimes want safe rooms where we're not allowed to even have copies of the documents about what occurred, the technical aspects of these data breaches. We have to go in there and look at the documents and maybe we can take notes or maybe not. But they're not going to just come out and tell us, here's how the data breach occurred, here's how they got through our security, here's how we failed. But that's not required. If that were the case, there would never be a data breach case, right? Keep that information concealed, never reveal it, and no one would ever be able to bring a case. Again, that defies common sense. Here you have notices going out to 76,000 people that there was a data breach. These companies offer credit monitoring, things like that. You have the plaintiff here alleging that there was fraudulent activity shortly after the data breach. That is clearly enough to at least state a plausible claim. The defendant failed to implement adequate security to protect the data, especially where they choose not to encrypt sensitive data. And in these cases, we rarely find a defendant with a good explanation for that. If you say, why in discovery? Why did you not encrypt the data? It's not a good answer. Is it that they don't want to spend the money? Is it that they don't want to spend the time? That it adds administrative overhead? Who knows? Right now, can I tell this court what the reason is in this case? I cannot. But that's why we need to get in discovery and figure it out. Again, it's not strict liability. After we take discovery as to what occurred here, what security measures they put in place, then we can figure that out. Would it be surprising based on other cases to see that there had been red flags that were ignored, that there were warnings that were ignored? That would not be surprising. But I cannot tell you as we sit here now whether that's the case here because they've not revealed that. What's your response to, I'm turning to the breach of implied contract now, what's your response to Mr. Bond's argument that there was no consideration because the law required the disclosure of that information anyway upon employment? So the consideration would be that they are inviting people to apply for jobs or to actually work there, and that would be the consideration that they've had the opportunity to consider this employment contract. But if it's not a requirement of the employer but rather a requirement of the law, I'm not sure that argument works. Well, so the question, I believe that the question is what consideration here would the Parity Shops be receiving in exchange for the plaintiffs providing this information? Do I understand the question correctly? And the answer is that they are, the Parity Shops is receiving the opportunity to consider this employment application and ultimately where they hire someone to have their employment services. That is consideration. So I ran through the other case. I feel like I should do it here. Again, apologies for the redundancy. On the duty issue, which the defendant in this case continues to say there's no duty under McConnell. Judge May, of course, ruled as she did in Pervis that there is a duty. Chief Judge Batten agreed in AmeriCorps. Judge Thrash agreed in Equifax. Judge Ross agreed here. And Judge Jones, of course, agreed in the Parkmobile case. As far as this issue of plaintiffs' information being given to its prior employer that was acquired, yes, we allege that the plaintiff gave us information to Hojage Foods and that it was acquired by the Parity Shops. The defendant here hasn't explained why. If there's an implied contract that arises at the time that information is given to the plaintiff's employer, why that doesn't carry over to the company that acquires it. I mean, the converse of that is you have a contract, but if the entity you have a contract with gets acquired, then the contract evaporates. That doesn't make sense, right? The contract just goes away because the company is acquired. I don't think that's what the law holds, and defendants certainly cited no law supporting that proposition. And ultimately, in these cases, what the defendant's positions boil down to is that they don't have a duty to safeguard data under negligence or contract. According to them, say these were in paper form. You've got 76,000 people's names and Social Security numbers. Can you just put it on the curb when you're done with it? Can you just set it out there? You don't have to shred it. You don't have to burn it. You can just put it on the curb, and anyone walking by, if they get there before the garbage truck comes, they can just pick it up and take it. And sorry, we had no duty to protect that data. Can you just protect this information under negligence or contract? I think clearly there is, and Judge May said that in the previous case. Again, it's common sense that when patients and, for purposes here, employees hand over their data to an employer, that there is a duty to safeguard that data. And defendant offers no rebuttal to that. They don't suggest that there would be a data under this circumstance or that circumstance. They don't say, explain any reason why they can't just, you know, if you're at a doctor's office, do you have patient records in the waiting room? And other patients can come in if they want and thumb through them? No, of course not. We all understand that. It's common sense. And that applies here as well to employees. Do employees have any less of an interest in protecting their Social Security numbers than anyone else? The financial services customers in the Irwin case, they, you know, Judge Pinnell found that they had stated a claim, survived a motion to dismiss just in entrusting their data to that company. And in Arby's, it's a credit card case. It's not employees, but it's the same. They entrusted their data and there's a reasonable expectation that it will be protected. And there's no reason that that should not apply to employees as well. My time is up. Unless the court has questions, I'll... Thank you to both counsel. Court is adjourned. All rise.